UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS § | |
| § | CRIMINAL NO. |
| WEATHERFORD PRODUCTION § | |
| OPTIMISATION (U.K.) LTD. f/k/a § | |
| EPRODUCTION SOLUTIONS § | **13 CR 735** |
| U.K. LTD. § | |
| (Incorporated under the laws of the | |
| United Kingdom) | |

## PLEA AGREEMENT

The United States of America, by and through, Kenneth Magidson, United States Attorney for the Southern District of Texas, and S. Mark McIntyre, Assistant United States Attorney, and defendant, Weatherford Production Optimisation (U.K.) Ltd. f/k/a eProduction Solutions U.K. Ltd. ("eProd U.K."), and defendant's counsel pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### TERMS OF THE AGREEMENT

1.  The defendant agrees to give up the right to be indicted by a grand jury and agrees to plead guilty to Count One of the Criminal Information (hereinafter "Information") in this case and to persist with that plea.

    a.  The defendant agrees that this Agreement will be executed by an authorized representative. Defendant further agrees that a Resolution duly adopted by the Board of Directors of eProd U.K., attached to this Agreement as Exhibit 1, represents that the signatures on this Agreement by eProd U.K. are authorized by eProd U.K.'s Board of Directors.

    b.  The defendant further agrees to pay to the United States a criminal fine in the amount of $1,000,000.00. Consistent with other Agreements entered into on this day,

1

defendant agrees to wire transfer to the United States $1,000,000.00 within thirty days following arraignment pursuant to payment instructions as directed by the United States in its sole discretion.

        c.     The defendant agrees to institute a compliance program designed to provide reasonable assurances that no further violations of United States export and trade sanctions law will occur. The United States agrees that the defendant's obligation to implement such a compliance program is satisfied by the defendant's agreement that the compliance program implemented by its parent company, Weatherford International Ltd., as described in the compliance presentation made to the United States in November 2009, will be applicable to the defendant.

        d.     The defendant agrees to fully cooperate with federal law enforcement and the United States Attorney's Office and to provide all non-privileged information relating to the offenses charged in the information in this case if requested to do so.

2. Count One, in pertinent part, charges the defendant with violating the International Emergency Economic Powers Act (Title 50, United States Code, Section 1701-1707).

3. In exchange for the defendant's plea of guilty to the Criminal Information in this case as well as the defendant's agreements outlined in paragraph one of this written Agreement, the United States agrees to recommend the Court impose a fine of $1,000,000.00.

4. Under 18, United States Code, Section 3561, the penalty for a violation of 50, United States Code, Section 1705 may include a possible period of probation from one year to five years. But pursuant to this Agreement, the parties expressly agree that a term of probation for the defendant is neither in the public interest or otherwise warranted in this case.

5.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the United States agrees that the specific terms of this Agreement outline the appropriate disposition of this case. This recommendation will bind the Court once the Court accepts this Agreement. The defendant understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement, and either party may withdraw from this Agreement in that event.

## PENALTY

6.  The penalty for a violation of Title 50, United States Code, Section 1705 includes a possible period of probation from one year to five years, a fine of up to $1,000,000.00 or twice the gross gain or loss resulting from the offense, and a $400 Mandatory Special Assessment per count of conviction. Title 18, United States Code, Sections 3551(c), 3561, 3571(d), and 3013(a)(2)(B).

   a.  The defendant hereby stipulates and agrees not to institute or participate in any proceeding to interfere with, alter, or bar enforcement of any fine, penalty, special assessment or forfeiture order pursuant to the automatic stay or other provision of the United States Bankruptcy Code.

   b.  The defendant agrees that nothing in this Agreement is intended to release the defendant from any and all of the defendant's excise and income tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

## WAIVERS

7.  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Should the Court impose the sentence

proposed herein, the defendant agrees that it will waive the right to appeal the plea, conviction and sentence (or the manner in which it was determined) on the grounds set forth in Title 18, United States Code, Section 3742. This Agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

8. The defendant is also aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, Section 2255, afford the defendant the right to contest or "collaterally attack" its conviction or sentence after the conviction has become final. Knowing that, the defendant knowingly waives the right to contest or "collaterally attack" the defendant's plea, conviction and sentence by means of any post-conviction proceeding.

9. Defendant waives all defenses to the conduct charged in the Information based on venue, speedy trial under the United States Constitution and Speedy Trial Act, and the running of the statute of limitations from January 1, 2011 to the time when any of the following events is determined by a court to occur: (a) defendant's conviction is later vacated for any reason, (b) defendant violates any provision of this Agreement, or (c) defendant's plea is later withdrawn. Further the defendant waives any and all constitutional and non-jurisdictional defects.

10. This Agreement binds only the United States Attorney's Office for the Southern District of Texas and the defendant; it does not bind any other United States Attorney or governmental agency. The only parties to this Agreement are the United States Attorney for the Southern District of Texas and eProd U.K. Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in such documents. Nothing in this agreement shall be construed as an acknowledgement by Weatherford that the Agreement, including the Factual Statement, is admissible or may be used in any proceeding other than in a proceeding brought by this Office.

## **RIGHTS AT TRIAL**

11. The defendant represents to the Court that defendant is satisfied that the defendant's attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, the defendant surrenders certain rights as provided in this Agreement. Defendant understands that the rights of defendants include the following:

    a. If the defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the Court all agree.

    b. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on its own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

12. The defendant understands that nothing in this Agreement will restrict access by the United States Probation Office or the Court to information and records in the possession of the United States or any of its investigative law enforcement agencies, including State and local law enforcement agencies, as well as information, documents and records obtained from the defendant.

## BREACH OF THE PLEA AGREEMENT

13. If the defendant should fail in any way to fulfill completely all of the obligations under this Agreement, the United States will be released from its obligations under the Agreement.

14. It is understood by the defendant and the United States that should the defendant fail to comply with any of the obligations set forth in this Agreement or violate any of the terms or conditions set forth in this agreement, or engages in any criminal violation of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706 through sentencing, the United States shall be released from its obligations under this Agreement, yet the defendant's plea and sentence will stand and the Southern District of Texas may institute or re-institute prosecution including but not limited to enhancement of the sentence and may prosecute the defendant for any and all violations of Federal law which the defendant may have committed. For purposes of this paragraph, the defendant waives any statute of limitations that may apply to any such Federal offenses or counts. Whether the defendant has breached any provision of this plea agreement shall be determined by the United States.

## FACTUAL BASIS

15. Should the defendant proceed to trial, the following facts among others would be proven beyond a reasonable doubt:

16. Weatherford International Ltd. ("Weatherford") is an oil and gas service company headquartered in Geneva, Switzerland.

17. eProduction Solutions U.K. Ltd. ("eProd U.K.") is a Scottish corporation with its principal place of business in Great Yarmouth, U.K.

18. eProductions Solutions, Inc. ("eProd U.S.") is a United States corporation with its principal place of business in Kingwood, Texas. eProd U.K. was considered a world leader in production optimization for flowing wells and all forms of artificial lift.

19. During the course of the investigation, agents learned that eProd U.K. employees interfaced with Iranian customers for the sale of goods and services to Iran. The equipment and services sold by eProd U.K. at times required components manufactured in the U.S. by eProd U.S. in Kingwood, Texas. In addition, eProd U.S. and eProd U.K. sales and intra-company orders were maintained and conducted through a shared company database. When ordering and sourcing products and services for Iran from the U.S., eProd U.K. provided false information concerning the end destination of the products it was ordering. eProd U.K. employees also removed labels and references to the U.S. origin of products before it exported them to Iran.

20. In 2001, a Weatherford subsidiary acquired the assets of CAC, Inc., and its affiliates from Thermo Electron. These assets became the core of the eProd family of companies. Prior to the Weatherford subsidiary's acquisition, eProd U.K.'s predecessor companies had supplied well-head control systems to Iran. eProd U.K. continued to accept and pursue control panel sales and parts sales to Iran after 2001.

21. eProd U.K. had a customer relationship with Kala Naft, the procurement arm of the National Iranian Oil Company ("NIOC"), prior to the acquisition of the CAC, Inc. assets. The NIOC is owned and controlled by the government of the Islamic Republic of Iran. Beginning in 2001, eProd U.K. had expressions of interest from Kala Naft for the purchase of well-head control systems. In 2003, eProd U.K. hired an Iranian agent to advise, consult, and facilitate the sale of well-head control systems to Kala Naft. In January 2004, eProd U.K. requested a price quote from eProd U.S. for 200 SDA pilots and related materials. On January 7, 2005, Kala Naft placed

7

a purchase order with eProd U.K. for 90 well-head control panels. On January 18, 2005, eProd U.K. received a quote from eProd U.S. for 180 SDA pilots that would be incorporated into the 90 control panels in Kala Naft's purchase order. When ordering the SDA pilots, eProd U.K. did not identify the end destination of the pilots as Iran.

22. In the summer of 2005, the SDA pilots were manufactured at eProd U.S.'s facility in Kingwood, Texas in order to fill the Kala Naft purchase order. The SDA pilots were then shipped in the later half of 2005 to eProd U.K. where they were incorporated into the well-head control panels. Once assembled, the well-head control panels were shipped to Kala Naft in Iran.

23. The International Emergency Economic Powers Act ("IEEPA"), 50, United States Code, Sections 1701-1707, authorized the President of the United States to impose economic sanctions against a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States when the President declares a national emergency with respect to that threat.

24. In 1987, President Ronald W. Reagan issued Executive Order No. 12613, imposing a broad embargo on imports of Iranian-origin goods and services. United States sanctions against Iran were strengthened in 1995 and 1997, when President William J. Clinton issued Executive Order Nos. 12957, 12959, and 13059, pursuant to, *inter alia*, IEEPA. These Executive Orders as implemented by the Iranian Transaction Regulations ("ITR"), 31 C.F.R. part 560, prohibited virtually all trade and investment activities between the United States and Iran, including but not limited to broad prohibitions on: (a) the importation into the United States of goods or services from Iran; (b) the exportation, sale, or supply of goods, technology, or services from the United States or by a United States person to Iran; (c) trade-related transactions with Iran by United States persons, including financing, facilitating or guaranteeing such transactions;

(d) the re-exportation from third countries to Iran by foreign persons of dual use and sensitive United States origin goods, technology, or services; (e) investment by United States persons in Iran or in property owned or controlled by the Government of Iran; and (f) facilitation by United States persons of transactions by foreign persons if the transaction by the foreign person would be prohibited if it were a United States person. Although the ITR authorized the exportation of goods or technology from the United States to a third country for substantial transformation or incorporation into a foreign-made end product intended specifically or predominately for Iran where the United States-origin good or technology were *de-minimis* and not controlled, this authorization specifically carved out foreign-made end products intended for use in the petroleum or petrochemical industries.

25. With the exception of certain exempt or authorized transactions, the OFAC regulations implementing the Iranian sanctions generally prohibited the export of goods, technology, or services to Iran from the United States. The ITR also prohibited "[a]ny transactions by a United States person or within the United States that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in [these orders]." Executive Order 12597, as expanded and continued by Executive Orders No. 12959 and 13059 and successive Presidential notices ("Executive Orders"), prohibit, among other things, certain actions regarding the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person.

26. The United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), had responsibility for administering the Iranian Transaction Regulations, and was the entity empowered to authorize transactions with Iran during the embargo. Such authorization, if

granted, would be in the form of a license. No license was obtained by either eProd U.K. or eProd U.S.

27. This written Agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this Agreement. The defendant acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is guilty. Any modification of this Agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

Executed on this the 25 day of November, 2013.

*[signature]*

ALEJANDRO CESTERO
AUTHORIZED REPRESENTATIVE FOR
WEATHERFORD PRODUCTION
OPTIMISATION (U.K.) LTD. f/k/a
EPRODUCTION SOLUTIONS U.K. LTD.

*[signature]*

F. JOSEPH WARIN
MICHAEL J. EDNEY
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
COUNSEL FOR THE DEFENDANT

Signed by Michael J. Edney with Approval of the Board of Directors (Exhibit 1)

SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of ___, 2013.

                                      DAVID J. BRADLEY, Clerk

                                  By: _____
                                          Deputy Clerk

APPROVED:
KENNETH MAGIDSON
UNITED STATES ATTORNEY

*/s/ S Mark McIntyre*
S. MARK MCINTYRE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS § | |
| § | CRIMINAL NO. |
| WEATHERFORD PRODUCTION § | |
| OPTIMISATION (U.K.) LTD. f/k/a § | |
| EPRODUCTION SOLUTIONS § | |
| U.K. LTD. § | |
| (Incorporated under the laws of the | |
| United Kingdom) | |

I, Michael J. Edney, have explained to the Defendant Weatherford Production Optimisation (U.K.) Ltd. f/k/a eProduction Solutions U.K. Ltd. its rights with respect to the pending Information. I have informed the Defendant that the Sentencing Guidelines and Policy Statement have been deemed as "advisory" to the court pursuant to Booker. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements and I have fully explained to the Defendant the provisions of those guidelines which may apply in the case. I have carefully reviewed every part of the Agreement with the Defendant. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____    November 26, 2013
F. Joseph Warin                 Date
Michael J. Edney
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
Counsel for the Defendant,
Weatherford Production Optimisation (U.K.) Ltd.
f/k/a eProduction Solutions U.K. Ltd.